## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN PROCOPIO; | : | |
| | : | |
| DANIEL MALLEN; | : | |
| | : | |
| MARK MILLER; | : | Civil Action No.: |
| | : | |
| MICHAEL McCLENAGHAN; and | : | |
| | : | |
| WILLIE WALLACE; | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| | : | |
| J.P.S. CONSTRUCTION COMPANY, INC. | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Brian Procopio, Daniel Mallen, Mark Miller, Michael McClenaghan, and Willie Wallace ("Plaintiffs"), by and through their undersigned counsel, bring this Complaint against J.P.S. Construction Company, Inc. ("Defendant"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, and contract.

## JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiffs FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Defendant is registered to do business in Pennsylvania and has a registered office in Erdenheim, PA.

2.      Jurisdiction over the PMWA claim is proper under 28 U.S.C. § 1367.

1

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiffs claims arose within this District.  Defendant conducts business in this District, and Plaintiffs were employed by Defendant in this District.

**PARTIES**

4.      Plaintiff Brian Procopio ("Plaintiff Procopio") is an individual currently residing in Exton, Pennsylvania. He was employed as a Laborer[1] by Defendant from approximately April 2023 through approximately May 2025. Pursuant to 29 U.S.C. § 216(b), Plaintiff Procopio has consented in writing to being a plaintiff in this action.  *See* Ex. A.

5.      Plaintiff Daniel Mallen ("Plaintiff Mallen") is an individual currently residing in Glenside, Pennsylvania. He was employed as a Laborer by Defendant from approximately 2018 through present. Pursuant to 29 U.S.C. § 216(b), Plaintiff Mallen has consented in writing to being a plaintiff in this action.  *See* Ex. B.

6.      Plaintiff Mark Miller ("Plaintiff Miller") is an individual currently residing in Willow Grove, Pennsylvania. He was employed as a Laborer by Defendant from approximately 2022 through approximately 2025. Pursuant to 29 U.S.C. § 216(b), Plaintiff Miller has consented in writing to being a plaintiff in this action.  *See* Ex. C.

7.      Plaintiff Michael McClenaghan ("Plaintiff McClenaghan") is an individual currently residing in Glenside, Pennsylvania. He was employed as a Laborer by Defendant from approximately May 2023 through present. Pursuant to 29 U.S.C. § 216(b), Plaintiff McClenaghan has consented in writing to being a plaintiff in this action.  *See* Ex. D.

8.      Plaintiff Willie Wallace ("Plaintiff Wallace") is an individual currently residing in

---

[1] The term "Laborer" connotes the job title Defendant assigned to Plaintiffs, rather than an accurate and legitimate prevailing wage trade classification.

2

Mount Pocono, Pennsylvania. He was employed as a Laborer by Defendant from approximately September 2023 through approximately April 2026. Pursuant to 29 U.S.C. § 216(b), Plaintiff Wallace has consented in writing to being a plaintiff in this action. *See* Ex. E.

9.    Defendant J.P.S.. Construction Company, Inc. is a Pennsylvania business corporation headquartered at 122 Maple Ave, Glenside, PA.

10.    Defendant employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

11.    Defendant's annual gross volume of business exceeds $500,000.

12.    Defendant is an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the FLSA.

## **FACTS**

13.    Defendant is a contractor that performs construction work for the Pennsylvania Turnpike Commission ("PTC") and other customers throughout Pennsylvania.

14.    Defendant regularly enter(ed) into public contracts with public entities (e.g., the PTC) to perform highway improvement and other infrastructure construction related work ("Public Contracts").

15.    In states and localities which have prevailing wage laws, including Pennsylvania, 43 P.S. § 165-1, et seq. ("PPWA"), Defendant's Public Contracts contain stipulations requiring the payment of prevailing wages for all hours of on-site construction work. Associated with the PPWA and contractual stipulations are wage determinations which set minimum rates of pay for various construction trade classifications (e.g., Operator, Carpenter, Laborer). Plaintiff does not presently possess Defendant's Public Contracts.

16.     At all relevant times, Plaintiffs were employed by Defendant as "workmen" within the meaning of the PPWA, 43 P.S. §165-2(7).  On Public Projects, Plaintiffs would perform various skilled labor tasks (e.g., Operating Engineer, Carpenter, etc.).

17.     Plaintiffs often spent the bulk of their workweeks performing construction work on the Turnpike in Western Pennsylvania (e.g., New Stanton, Johnstown, and surrounding areas). When they worked in Western PA, JPS housed Plaintiffs in hotels.  Before they started on-site construction work (usually on Mondays), they were required to report to Defendant's Glenside shop. Upon arrival, Plaintiffs perform mandatory duties such as gathering tools, equipment, and materials and loading such tools, equipment, and materials onto company-owned trucks. These activities are required by Defendant, and are an intrinsic and indispensable element of the construction work performed by Plaintiff and other hourly employees throughout the workday. Construction cannot be performed without bringing necessary tools and materials to the worksite.

18.     Plaintiffs are not paid any compensation for time spent at the Glenside shop, much less the 4-5 hours of time travelling from Glenside to Western PA.

19.     During the weeks in Western PA, Plaintiffs would typically work ten-hour shifts at the job sites for four days per week (Monday through Thursday). Plaintiffs would typically travel on Sunday nights and Thursday nights.

20.     At the end of most workweeks, Plaintiffs and other hourly employees are required to return to Defendant's Glenside shop. Upon returning to the shop, Plaintiffs perform duties such as unloading tools, equipment, and materials from company-owned trucks and storing such tools, equipment, and materials within the shop. These activities are required by Defendant, and are an intrinsic and indispensable element of the demolition, maintenance, and construction work performed by Plaintiff and other hourly employees throughout the workday.

21.    Plaintiffs are not paid any compensation for time spent at the Glenside shop at the end of the workday, much less the time required to travel from Western PA to Glenside.

22.    Although JPS is located in Glenside, PA, Plaintiffs were typically only at the Glenside shop on Sundays and Thursdays, when leaving for and returning from Western PA.

23.    During weeks of work in Western PA, Plaintiffs also were required to start their weekdays by showing up to one of JPS' maintenance yards.

24.    During workdays when Plaintiffs report to the Glendale shop (or a maintenance yard in Western PA), Plaintiffs were required to drive from the Glendale shop (or maintenance yard) to the construction site, often spending time to fuel company-owned trucks and equipment at gas stations. Plaintiffs are typically not paid for this travel time.

25.    Starting approximately 2023, Plaintiff Procopio was employed by Defendant as a Laborer on Pennsylvania job sites. From approximately 2023 through 2025, Plaintiff Procopio was classified as a Laborer and paid approximately $45-$68.50 per hour of work (without any non-cash employee benefits such as healthcare or retirement). In addition to general labor, he regularly operated heavy machinery and specialized equipment, including aerial lifts exceeding 70 feet in height, skid steers, snooper truck lifts, and magnetic drills used in bridge construction. For approximately 20% of Plaintiff Procopio's work at the job sites, he performed general labor tasks, such as blocking off lanes and preparing for the day's work. For approximately 80% of his work at the job sites, he performed skilled tasks. Plaintiff Procopio was not properly compensated for performing these skilled and hazardous tasks.

26.    Plaintiff Procopio worked approximately 51.5 hours per week but was only paid for approximately 40 hours per week. During approximately 20 weeks in 2025 and 8 weeks in 2026, Plaintiff Procopio reported to the Glenside shop, gathered tools and equipment and loaded

the trucks (this usually took an hour), traveled from Glenside to Pittsburgh, and made multiple stops along the route to fuel or pick up necessary equipment (the drive took approximately five (5) hours). When they returned to the Glenside Shop, Plaintiff Procopio spent about half an hour clearing out the dump truck and cleaning to have trucks ready for the next shift.

27.    Plaintiff Procopio recalls a few instances where he was sent by JPS management to out-of-town job sites without the proper equipment or materials needed to perform the work. As a result, work was delayed for extended periods. During the delays, Plaintiff Procopio was not compensated, even though he was required to remain on-site or nearby.

28.    Starting approximately 2018, Plaintiff Mallen was employed by Defendant as a Laborer on Pennsylvania job sites. From approximately 2018 through present, Plaintiff Mallen was classified as a Laborer and paid $58.25 per hour of work (without any non-cash employee benefits such as healthcare or retirement). In addition to general labor, he regularly used specialized machinery to mix, form and pour concrete, built rebar cages (reinforcing steel bars assembled into a cylindrical or rectangular structure, used to strengthen concrete), placed bolts into wet concrete at specific positions for signs to be bolted after concrete dried, rigged the beams that held signs and did other carpentry work. For approximately 40 % of Plaintiff Mallen's work at the job sites, he performed skilled tasks. For approximately 60 % of Plaintiff Mallen's work at the job sites, he performed general labor tasks.  Plaintiff Mallen was not properly compensated for performing these skilled and hazardous tasks.

29.    Plaintiff Mallen worked approximately 50.5 hours per week but was only paid for approximately 40 hours per week. During approximately 55-70% of his weeks worked for 8 years, Plaintiff Mallen reported to the Glenside shop on Sunday, loaded equipment and supplies into trucks (this took approximately one and a half (1.5) hours), and drove to Irwin, Cranberry, and

6

other locations in Western Pennsylvania (the drive is approximately four (4) to five (5) hours). Plaintiff Mallen was never compensated for this work.

30.    Plaintiff Mallen recalls being paid for travel only in emergency situations when highway lanes were shut down, which occurred 4-5 times per year.

31.    In 2024, Plaintiff Mallen recalls being paid for approximately 10-15 hours at a carpenters' rate while working on a project in Irwin, PA. Other than those approximate 10-15 hours Plaintiff Mallen was paid at a laborer rate for the additional 8-9 months that he worked on the project.

32.    Starting approximately June 2022, Plaintiff Miller was employed by Defendant as a Laborer on Pennsylvania job sites. From approximately 2022 through 2025, Plaintiff Miller was classified as a Laborer and paid an average of $55.00 per hour of work (without any non-cash employee benefits such as healthcare or retirement). In addition to general labor, he regularly operated lifts (machinery used for elevating workers and materials to high, hard-to-reach areas) and did carpentry work. Approximately 90% of his time at job sites was spent working skilled tasks and approximately 10% of his time at job sites was spent on general labor tasks. Plaintiff Miller was not properly compensated for performing these skilled tasks.

33.    Plaintiff Miller worked approximately 49 hours per week but was only paid for approximately 40 hours per week. For twelve (12) weeks in 2023, forty (40) weeks in 2024, and 40 (forty) weeks in 2025, Plaintiff Miller reported to the Glenside shop on Sunday, loaded equipment and supplies into trucks (which took at least an hour) and drove to Western Pennsylvania (the drive is approximately four (4) hours). Plaintiff Miller was never properly compensated for this work.

34.    On five or six days during 2024-2025, Plaintiff Miller recalls being paid about $60

for that day, in situations where there was an issue with his equipment or machinery and therefore he was unable to perform onsite construction work on those days.

35.    Starting approximately May 2023, Plaintiff McClenaghan was employed by Defendant as a Laborer on Pennsylvania job sites. From approximately 2023 through current, Plaintiff McClenaghan was classified as a Laborer and paid $50-$58.75 per hour of work (without any non-cash employee benefits such as healthcare or retirement). In addition to general labor, he regularly did carpentry work and operated heavy machinery, such as a lift. Plaintiff McClenaghan would spend approximately 70% of his time at a job site performing skilled tasks and approximately 30% of his time performing general labor tasks. Plaintiff McClenaghan was not properly compensated for performing these skilled and hazardous tasks.

36.    Plaintiff McClenaghan worked approximately 49 hours per week but was only paid for approximately 40 hours per week. During most of his weeks (40 weeks per year or more) from May 2023 through April 2024, Plaintiff McClenaghan reported to the Glenside shop, unloaded the truck from the prior week, loaded equipment and supplies into trucks (this took at least one hour), and drove to New Stanton, Pennsylvania (the drive is approximately four (4) hours). Plaintiff McClenaghan was never compensated for this work.

37.    On only one occasion, Plaintiff McClenaghan was paid for his travel time from the Glendale shop to a construction site in Cranberry, PA. On that one occasion, Plaintiff McClenaghan recalls being paid his regular rate of approximately $58 per hour.

38.    Starting approximately September 2023, Plaintiff Wallace was employed by Defendant as a Laborer on Pennsylvania job sites. From approximately 2023 through 2026, Plaintiff Wallace was classified as a Laborer and paid $48-$52 per hour of work. In addition to general labor, he regularly operated heavy machinery and specialized equipment, including aerial

lifts exceeding 70 feet in height, skid steers, snooper truck lifts, and magnetic drills in bridge construction. Plaintiff Wallace would spend approximately 70% of his time at a job site performing skilled tasks and approximately 30% of his time performing general labor tasks. Plaintiff Wallace was not properly compensated for performing these skilled and hazardous tasks.

39.     Plaintiff Wallace worked approximately 52 hours per week but was only paid for approximately 40 hours per week. During approximately 95% of his weeks worked over 2.5 years, Plaintiff Wallace reported to the Glenside shop, loaded equipment and supplies into trucks (this took approximately one (1) to two (2) hours), and drove to Cranberry, Pennsylvania (the drive is approximately four and a half (4.5) hours). At the end of the week, he returned to Glenside and unloaded the trucks (this took approximately one (1) to two (2) hours). Plaintiff Wallace was never compensated for this work.

### Complaints/Willfulness

40.     Having full knowledge of its legal obligations, Defendant willfully disregarded these complaints as well as applicable wage requirements under the FLSA and state law, by continuing to fail to pay an overtime premium (much less at correct prevailing wage rates) to construction workers.

41.     Defendant does not maintain accurate records of the actual hours that Plaintiffs worked each workday and the total hours worked each workweek as required by the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5(a), 516.6(a)(1).

42.     Defendant knew or should have known that Plaintiffs were not exempt from the FLSA's overtime requirements.

43.     Defendant is a sophisticated national business with access to knowledgeable human resource specialists and competent labor and employment counsel.

44.     Defendant has acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to pay Plaintiff [NAME] and the Class for all overtime wages mandated by 29 U.S.C. § 207.

## COUNT I
### Violations of the Fair Labor Standards Act

45.     All previous paragraphs are incorporated as though fully set forth herein.

46.     The FLSA requires that covered employees be compensated by their employers for all hours worked, and at 150% of their regular hourly rate for all hours worked in excess of 40 in any workweek ("Overtime Rate").  29 U.S.C. § 207(a)(1).

47.     Defendant is subject to the wage requirements of the FLSA because it is an "employer" under 29 U.S.C. § 203(d).

48.     During all relevant times, Defendant was engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

49.     During all relevant times, Plaintiffs were covered employees of Defendant, and as such were entitled to the above-described FLSA's protections.  *See* 29 U.S.C. § 203(e).

50.     Plaintiffs are not exempt from the requirements of the FLSA.  Plaintiffs are entitled to be paid at Overtime Rate for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

51.     Defendant failed to comply with 29 U.S.C. § 207(a)(1) by failing to compensate Plaintiffs at Overtime Rate for all hours worked over forty (40) in a workweek.  More specifically, Defendant failed to: (1) pay the proper prevailing wage for all hours of work performed under the Public Contracts for regular work hours or for overtime hours; (2) properly weight the overtime rate when its workers worked at multiple wage rates in the same workweek (see, e.g., 29 CFR § 778.115); (3) include in the regular rate of pay for overtime purposes, wages paid in lieu of fringe

10

benefits on publicly funded construction projects; and (4)pay Plaintiffs any wages for time spent at the Glenside shop and time spent traveling between the shop and construction sites (including time spent gassing vehicles/equipment). Defendant has violated the PMWA during those weeks in which the combined pay and unpaid hours exceed 40.

52.     Defendant knowingly failed to compensate Plaintiffs at Overtime Rate for all hours worked in excess of forty (40) hours per workweek, in violation of 29 U.S.C. § 207(a)(1).

53.     Defendant also failed to make, keep, and preserve records with respect to Plaintiffs sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(a)(5).

54.     In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

55.     Pursuant to 29 U.S.C. § 216(b), employers such as Defendant, who fail to pay employees' wages in conformance with the FLSA shall be liable to the employees for unpaid wages, liquidated damages, court costs and attorneys' fees incurred.

## COUNT II
### Violations of the Pennsylvania Minimum Wage Act

56.     All previous paragraphs are incorporated as though fully set forth herein.

57.     The PMWA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at "Overtime Rate". 43 P.S. § 333.104(c), 34 Pa. Code § 321.41.

58.     The regular rate of pay under the PMWA includes all wages (including those owed pursuant to the FLSA and any employment contract), except those specifically excluded from the regular rate such as monies paid to employee benefit plans.  43 P.S. § 333.104(c); 34 Pa. Code § 231.43(4).

11

59.     Defendant is subject to the overtime requirements of the PMWA because it is an employer under 43 P.S. § 333.104(g).

60.     During all relevant times, Plaintiffs were covered employees entitled to the above-described PMWA protections.  43 P.S. § 333.103(h).

61.     Defendant failed to compensate Plaintiffs at an Overtime Rate for all hours worked in excess of forty (40) hour per week, in violation of 43 P.S. § 333.104(c) and 34 Pa. Code § 321.41. More specifically, Defendant failed to: (1) pay the proper prevailing wage for all hours of work performed under the Public Contracts for regular work hours or for overtime hours; (2) properly weight the overtime rate when its workers worked at multiple wage rates in the same workweek (see, e.g., 29 CFR § 778.115); (3) include in the regular rate of pay for overtime purposes, wages paid in lieu of fringe benefits on publicly funded construction projects; and (4)pay Plaintiffs any wages for time spent at the Glenside shop and time spent traveling between the shop and construction sites (including time spent gassing vehicles/equipment). Defendant has violated the PMWA during those weeks in which the combined pay and unpaid hours exceed 40.

62.     With respect to those weeks in which Plaintiffs received straight-time pay for some travel hours, Defendant violated the PMWA by failing to include such hours in determining the overtime premium wages owed to Plaintiffs.

63.     Under the PMWA, in addition to the unpaid overtime wages for hours worked over 40, Plaintiffs seek all unpaid straight-time prevailing wages, in workweeks in which they worked over 40 hours.

64.     Pursuant to 43 P.S. § 333.113, employers, such as Defendant, who fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses not paid, interest, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT III
### Breach of Contract as Third-Party Beneficiaries
### Plaintiffs v. J.P.S. Construction Company, Inc.

65.     All previous paragraphs are incorporated as though set forth fully herein.

66.     Plaintiffs were direct employees of J.P.S. Construction Company, Inc. and performed the previously stated skilled labor tasks within the scope of Defendant's Public Contracts.

67.     Pursuant to the Defendant's Public Contracts, as well as any applicable subcontracts, Defendant was contractually obligated to pay Plaintiffs the applicable prevailing wage for the previously stated skilled labor classifications (e.g., carpenter, operating engineer, etc.) provided in the relevant Wage Determinations for all hours worked by Plaintiffs on the Public Projects. 43 P.S. §§ 165-3, 165-4; 34 Pa. Code §§ 9.103(1)-(6).

68.     Plaintiffs, as workmen entitled to the prevailing wages described in the preceding paragraphs under the terms of the Public Contracts and any applicable subcontracts, are intended third-party beneficiaries of those contracts. 34 Pa. Code §§ 9.103(3)-(4) (requiring prevailing wages be paid to employees of both general and subcontractors and requiring general contractors to "insert in each of his subcontracts the stipulations contained in these required provisions").

69.     Defendant failed to pay Plaintiffs for all hours of work performed on the Public Projects at the applicable prevailing wage rates corresponding to the work performed, in violation of the Public Contracts.

70.     Plaintiffs were harmed by Defendant's breach of the Public Contracts in that they were deprived of the applicable prevailing minimum wages required by the terms of said contracts.

71.     Plaintiffs are each due unpaid prevailing wages at the applicable prevailing wage

rates corresponding to the work performed, plus any additional damages (e.g., liquidated damages or interest) provided in applicable Public Contracts, and all consequential damages resulting from the breach.

**COUNT IV**
**Violation of the Pennsylvania Wage Payment and Collection Law**
**<u>Plaintiffs v. J.P.S. Construction Company, Inc.</u>**

72.     All previous paragraphs are incorporated as though fully set forth herein.

73.     The Pennsylvania Wage Payment and Collection Law ("WPCL") provides that an employer is obligated to pay all wages due to its employees.  See 43 P.S. § 260.3.

74.     Pursuant to the Public Contracts, Plaintiffs were entitled to prevailing wages according to the trade and classification of work they performed.

75.     At all relevant times as alleged herein, Plaintiffs were employed by Defendant within the meaning of the WPCL.

76.     Defendant has intentionally failed to pay the wages, including prevailing minimum wages and overtime wages, due for all work performed within the scope of the Public Contracts, as set forth in the preceding paragraphs of this Complaint, in violation of Pa. Code, 43 P.S. § 260.3.

77.     Defendant is not permitted by state or federal law, or by an order of a court of competent jurisdiction, to withhold or divert any portion of Plaintiffs' wages that concern this lawsuit.

78.     Defendant did not have written authorization from Plaintiffs to withhold, divert or deduct any portion of their wages that concern this lawsuit.

79.     Pursuant to 43 P.S. §§ 260.9 and 260.10, employers such as Defendant, who intentionally fail to pay an employee wages in conformance with the WPCL shall be liable to the employee for the wages or expenses that were intentionally not paid, liquidated damages, court

14

costs and attorney's fees incurred in recovering the unpaid wages.

80.    Due to Defendant's violation of the WPCL, Plaintiffs are entitled to all unpaid prevailing minimum wages at the appropriate rate, as well as any applicable overtime premium wages, plus liquidated damages, prejudgment interest, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief:

a.  Unpaid wages, unpaid prevailing wages, unpaid overtime wages, and prejudgment interest to the fullest extent permitted under the law;

b.  Liquidated damages to the fullest extent permitted under the FLSA and the WPCL;

c.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and,

d.  Such other and further relief as this Court deems just and proper.

Dated: June 5, 2026

Respectfully Submitted,

GOODLEY MCCARTHY LLC

by:    /s/ James E. Goodley
       James E. Goodley (PA 315331)
       Ryan P. McCarthy (PA 323125)
       1650 Market Street, Suite 3600
       Philadelphia, PA 19103
       Telephone: (215) 394-0541
       james@gmlaborlaw.com
       ryan@gmlaborlaw.com

*Attorneys for Plaintiffs*

15